ANNA J. KUKLINSKA *vs.* PLANNING BOARD OF WAKEFIELD
(and two companion cases [1]).

Middlesex.    November 5, 1969. — March 5, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Real Property*, Ownership. *Subdivision Control. Equity Pleading and Practice*, Master: findings, report of evidence; Appeal; Decree; Subdivision control appeal.

Where it appeared in a suit in equity that a judge, in entering an interlocutory decree confirming a master's report and a final decree dismissing the bill, inadvertently failed to consider modifications of the report agreed upon by the parties, that, on motion by the plaintiff filed within the twenty days allowed for appeal, the judge vacated the decrees by reason of such failure and entered a new interlocutory decree confirming the report with modifications and a new final decree dismissing the bill, and that the plaintiff appealed from the new decrees within twenty days after their entry, it was held that it was within the judge's power so to vacate the earlier decrees and that the plaintiff's appeals were timely. [126]

Evidence reported by a master by direction of the court in a suit in equity involving the issue of the location of the boundary between two adjacent parcels of land of the parties and consequently the issue of the ownership of a small disputed area showed that the disputed area belonged to the plaintiff and that a contrary conclusion of the master in favor of the defendants was erroneous. [128]

Where a plan submitted to a municipal planning board by an applicant for its approval under the subdivision control law included an area not owned by the applicant, the plan did not conform to a regulation of the board requiring that an applicant "be the owner of all the land included in the proposed subdivision," and the owner of the area was entitled, on an appeal to the Superior Court under G. L. c. 41, § 81BB, from a decision of the board approving the plan, to a decree annulling the decision and remanding the plan to the board for further consideration and action. [129]

In a suit in equity by way of appeal under G. L. c. 41, § 81BB, from a decision by a municipal planning board respecting a subdivision plan, the court should make its own findings in passing on the correctness of the board's decision. [130]

THREE BILLS IN EQUITY filed in the Superior Court on June 22 and July 1, 1966.

---

[1] The companion cases are Mary Kuklinsky *vs.* Planning Board of Wakefield and Mary Kuklinsky *vs.* John C. Luciani & another.

The suits were heard by *Ponte*, J., on a master's report.

*Sherman Davison* for the plaintiffs.

*Mario Misci* for John C. Luciani & another (*Francis C. McGrath, Jr.*, Town Counsel, for Planning Board of Wakefield, with him).

*M. Gardner Clemons*, for Wakefield Cooperative Bank, joined in a brief.

SPALDING, J. These are three cases which were tried together. Two are bills in equity by way of appeal from decisions of the planning board of the town of Wakefield. G. L. c. 41, § 81BB. The other case is a bill in equity seeking injunctive relief and damages arising out of an alleged trespass. The cases were referred to a master. At issue are the boundary between two adjoining properties and the approval given by the planning board of Wakefield to a subdivision plan of one of the properties.

Mary Kuklinsky and the Lucianis own adjoining tracts of land in Wakefield that abut Montrose Avenue on the south. Anna J. Kuklinska owns property abutting the other two properties to the north. (Her property also abuts Mary Kuklinsky's to the east.) In Mary Kuklinsky *vs*. John C. Luciani & another, the plaintiff alleges a trespass to land allegedly owned by her both in fact and of record since 1914. The dispute concerns the boundary between the plaintiff's and the defendants' property. The disputed area measures six and one-half feet on Montrose Avenue and extends to the rear line of their parcels, where it measures about forty feet, thus comprising about 7,200 square feet. Within the disputed area a narrow, winding, unpaved way, known as Wood Road, some eight feet wide, runs from Montrose Avenue to the rear of the property. The defendants acquired the tract adjoining the plaintiff's land in 1962, and at the time this suit was commenced were subdividing for a housing development. The plaintiff alleges that in April, 1966, the defendants committed various acts of trespass on the land claimed as hers, including the removing of boundary markers, cutting of trees, and blocking of Wood Road.

Mary Kuklinsky *vs*. Planning Board of Wakefield is an

appeal under G. L. c. 41, § 81BB, seeking an annulment of the planning board's decision approving a subdivision plan of the Luciani property. Mary Kuklinsky alleges that approval was erroneous because the applicants, the Lucianis, were not the owners of all the land included in the subdivision plan, as required by statute and the rules and regulations of the planning board. The plan submitted by the Lucianis included the property which is the subject of the trespass action between them and Mary Kuklinsky.

In Anna J. Kuklinska *vs*. Planning Board of Wakefield, which is also an appeal under § 81BB, the plaintiff alleges that the planning board's approval violated its own rules and regulations because the plan failed to provide for the projection of streets within the subdivision into the plaintiff's adjoining land. In both cases involving the Subdivision Control Law, the Lucianis were permitted to intervene as defendants.

The cases were heard in the Superior Court upon the master's report, a motion to confirm his report, and upon the plaintiffs' exceptions thereto. On April 25, 1968, the judge entered an interlocutory decree confirming the master's report; he also entered final decrees dismissing the three bills. On May 13, 1968, the plaintiffs moved to vacate the interlocutory and final decrees in order to correct errors and omissions in the master's report that had been orally agreed to by counsel in open court on November 7, 1967. Through inadvertence, these had not been considered by the judge in entering the decrees. On May 24, 1968, the judge entered a revised interlocutory decree confirming the master's report with modifications. Final decrees dismissing the bills were again entered. On June 28, 1968, on motion of the plaintiffs made on June 4, the judge vacated the interlocutory and final decrees of May 24, 1968, and entered in each case a second revised interlocutory decree confirming the master's report with modifications and a new final decree dismissing the bill. From the decrees of June 28, 1968, the plaintiffs appealed on July 12, 1968. The judge entered a nunc pro tunc order that the testimony before the

master, which had been taken by a stenographer, be reported. He also ordered all the exhibits to be incorporated by reference in the master's report.

### THE TIMELINESS OF THE APPEALS.

The defendants contend that the plaintiffs' appeals were not timely, and therefore ought to be dismissed. We disagree. General Laws c. 214, § 19, prescribes a period of twenty days from entry of a final decree to appeal therefrom. Within the twenty days after the final decrees of April 25 and May 24, 1968, instead of appealing, the plaintiffs moved to vacate the interlocutory and final decrees because modifications, previously agreed upon, had not been included in the master's report. On July 12 the plaintiffs appealed from the final decrees of June 28.

The defendants invoke the rule that "after the entry of a final decree the case is disposed of subject to the right of appeal; and the decree cannot be vacated because of supposed errors in the court's decision, because of false testimony on any of the issues involved, or because the case of the petitioner was not properly presented." *Sullivan* v. *Sullivan*, 266 Mass. 228, 229, and cases cited. Recognizing that there is an exception to this rule in cases of "clerical errors, mistakes in computation or irregularities in making up the record," *Thompson* v. *Goulding*, 5 Allen, 81, 82, the defendants argue that the exception is not applicable here. In *Hyde Park Sav. Bank* v. *Davankoskas*, 298 Mass. 421, 424, we said that the "power to set aside a final decree on motion because of accident or mistake . . . is not limited to the instances enumerated . . . [in *Thompson* v. *Goulding*] but extends to other cases analogous in principle." We think that the court's failure to consider the master's report in light of the modifications agreed on by counsel is "analogous in principle" to the exceptions mentioned in *Thompson* v. *Goulding*. It is to be noted that the plaintiffs brought the errors in the master's report to the attention of the court in each instance by a motion to vacate within the time allowed for an appeal.

## The Trespass Case.

We turn to the trespass case of Mary Kuklinsky *vs.* John C. Luciani & another. Where, as here, the evidence before the master is reported, the "evidence may be used to show that . . . [his] findings of fact are plainly wrong." *Morin* v. *Clark*, 296 Mass. 479, 483. *Shelburne Shirt Co. Inc.* v. *Singer*, 322 Mass. 262, 265. Within this scope of review, we are of opinion that the findings of the master on the crucial issue (ownership of the disputed area) cannot stand. The essence of the controversy is the boundary between the land of the plaintiff and the land of the defendants. The master's conclusion that the area in dispute belonged to the defendants cannot be sustained in light of the evidence relevant to title. All parties trace their claim of title to a common owner, one David Wiley, whose Lot no. 4 originally comprised both tracts. A partition of this lot into two parts was made September 17, 1849, and recorded on September 22, 1849. The westerly half of Lot no. 4 went to William Wiley and the easterly portion to Sally L. Wiley. That the plaintiff takes under Sally Wiley's deed and that the Lucianis' title derives from that of William Wiley are not in dispute. The 1849 partition deed conveys to William Wiley "so much of Lot No. Four as is not hereinafter partitioned and set off to Sally L. Wiley." [1] It thus appears that the western boundary of Sally Wiley's (Kuklinsky's) property was to serve as a monument that fixed the easterly boundary of the remainder or westerly part of Lot no. 4 (the Luciani property). There was evidence that the deed assigning to Sally Wiley the easterly part of Lot no. 4 described the property granted to her as measuring thirty-five rods on the south and thirty-six rods on the north side. A deed from the estate of Sally Wiley and from the estate's grantee contained identical measurements. In the partition deed assigning the westerly part of Lot no. 4 to William Wiley (the Luciani property) no dimensions appear other

---

[1] The next deed in the Luciani chain of title also states "so much of said lot No. 4 as was not by a deed of partition among the heirs of David Wiley, assigned and set off to Sally L. Wiley."

than a description of the total tract as six and one-half acres. The testimony and exhibits prepared by the plaintiff's expert witness show that the thirty-five and thirty-six rod dimensions establish the westerly boundary of Sally Wiley's tract as including the disputed area.

It appears that in concluding that the land belonged to the Lucianis, the master relied on a Land Court decree entered in a proceeding between the Lucianis and Anna Kuklinska, in which the northerly boundary of the Luciani property was in issue. It is undisputed that Mary Kuklinsky was not a party to this proceeding. In the course of this proceeding the Land Court referred to a stone wall 359 feet from Montrose Avenue as a boundary marker. The master used this monument to determine the easterly boundary of the Luciani property, despite the fact that Mary Kuklinsky was not a party to this proceeding and was not bound by it. If further appears that the experts called by the Lucianis were not conversant with the original deed of partition, and based their measurements of the easterly boundary on the stone wall mentioned in the Land Court decree. In the light of all the evidence the master's conclusion that title to the disputed area was in the Lucianis was plainly wrong. The evidence on this point, most of which was documentary, also shows that the plaintiff is the record owner of this area.

Having determined that the plaintiff is the owner of the disputed area, we turn to the matter of damages. The master found that there was no damage. It is apparent that this finding was based in whole or in part on his conclusion that the defendants were the owners of the area where the alleged acts of trespass occurred. There was a substantial amount of evidence introduced by the plaintiff tending to show acts of trespass on the part of the defendants causing damage. This evidence was not contradicted. The master made no finding that these acts did not occur or that they did. Rather, he concluded that the "acts complained of . . . do not amount to trespass." This conclusion is so vague that it is in doubt whether the master found that any of these acts occurred at all. We are of opinion that the

plaintiff should be given an opportunity to establish what, if any, acts of trespass on the part of the defendants occurred, and to prove the damage caused thereby. The final decree is reversed and the case is to stand for further hearing on these issues and on the matter of the issuance of an injunction restraining trespass. The plaintiff is to have costs of appeal.                                                    *So ordered.*


MARY KUKLINSKY'S APPEAL IN THE SUBDIVISION CONTROL
CASE.

The master's findings in favor of the Lucianis on the issue of ownership appear to be the basis for the decree upholding the planning board's decision. But our decision above that Mary Kuklinsky has title to the disputed land vitiates that decree. Since the Luciani subdivision plan includes the disputed area, the Lucianis are clearly not the owners, of record or otherwise, of all the land included in the subdivision plan.

General Laws c. 41, § 81L, defines a subdivision applicant as an "owner or his agent." The rules and regulations of the Wakefield planning board require that the "applicant must be the owner of all the land included in the proposed subdivision"; and the owner is defined as the "owner of record." Section 81M states that "It is the intent of the subdivision control law that any subdivision plan . . . shall receive the approval of such board if said plan conforms to the . . . reasonable rules and regulations of the planning board pertaining to subdivisions of land." See *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1, 6. The plan in question clearly does not conform to the rules and regulations of the planning board because it includes land not owned by the applicant.

The final decree dismissing the bill is reversed. A new decree is to be entered annulling the decision of the planning board and remanding the plan to it for further consideration and action.                                                    *So ordered.*

## ANNA KUKLINSKA'S APPEAL IN THE SUBDIVISION CONTROL CASE.

Anna Kuklinska seeks an annulment of the planning board's approval of the Luciani subdivision plan on the ground that the board did not comply with its own regulations requiring provision for the projection of streets in the proposed subdivision into adjoining property.[1] The master made no findings on the question of access. He did state that the board found that the plaintiff "had access to and from her land on Montrose Avenue and other streets." But in passing on the correctness of the board's decision it is incumbent on the court (the master here) to make its own finding. *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 479.

In view of our decision in the Kuklinsky case against the planning board, the final decree is reversed, and a new decree is to be entered annulling the decision of the planning board and remanding the plan to it for further consideration and action.

*So ordered.*

---

[1] Section IV A 1 d of the planning board's regulations reads: "If adjoining property is not subdivided but is, in the opinion of the Board, suitable for ultimate development, provision shall be made for proper projection of streets into such property by continuing appropriate streets within the subdivision to the exterior boundary thereof."